UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

LESLIE B. DANIELS,
and 100 EVERGLADES, LLC
a Florida limited liability company

      Plaintiffs,

v.                             Case No.:

TOWN OF PALM BEACH,
FLORIDA,

      Defendant.
_____/

**COMPLAINT FOR DECLARATORY,
<u>INJUNCTIVE RELIEF AND DAMAGES</u>**

Plaintiffs, LESLIE B. DANIELS and 100 EVERGLADES, LLC, sue

Defendant, TOWN OF PALM BEACH, FLORIDA, and allege as follows:

**<u>PARTIES JURSIDICTION AND VENUE</u>**

1.    Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 for violation

of their rights under the First, Fifth, and Fourteenth Amendments of the United

States Constitution and for declaratory relief pursuant to 28 U.S.C. §§ 2201 and

2202.

2.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1343(a)(3).  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.  This

Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to

1

28 U.S.C §1367(a), because Plaintiffs' state law claims form a part of the same case or controversy and arise out of a common nucleus of operative facts.

3.     Plaintiff LESLIE B. DANIELS ("Daniels") is a resident of the State of Florida and resides within the jurisdictional border of the Town of Palm Beach, Florida.

4.     Plaintiff 100 EVERGLADES, LLC ("100 Everglades") is the legal owner of real property in the Town of Palm Beach, Florida and maintains its principal place of business in the Town of Palm Beach, Florida.

5.     Defendant, TOWN OF PALM BEACH, FLORIDA ("Town"), is a municipality organized under the laws of Florida and located in Palm Beach County.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the TOWN OF PALM BEACH, FLORIDA is a municipality located within the District.

**<u>BACKGROUND FACTS</u>**

7.     Daniels is the lessee of certain beachfront property located within the Town of Palm Beach located at 100 Everglades Avenue, Palm Beach, Florida 33480 (the "Daniels Property"), which sits at the corner of Everglades Avenue and N. Ocean Boulevard which runs north and south along the Atlantic Coast.

8.     The Daniels Property is legally owned by 100 Everglades of which Daniels is the sole managing member.  Daniels leases the property from 100 Everglades pursuant to a 99-year lease agreement dated December 16, 2010, and recorded in the official records of Palm Beach County at Official Records Book 24422, pages 266-274, attached as **Exhibit "1."**  At all relevant times, Daniels acted on behalf of himself and 100 Everglades.

9.     The Daniels Property is Daniels' homestead residence, and he has resided in this home since 2004.  The Daniels Property includes a parcel of private beach property (the "Daniels Beach Parcel") situated east of N. Ocean Boulevard as depicted on the Property Appraisers website in attached **Exhibit "2."**  The Daniels Beach Parcel is a beachfront parcel spanning approximately 166.75 feet along the Atlantic Ocean and extending seaward approximately 90 feet to the State of Florida's Erosion Control Line ("ECL").  The area westward of the ECL includes a large private beach area east of an existing concrete seawall, small brick pad and small beach cabana along with a private gate west of the seawall.  Beach vegetation and dunes are present on this parcel as well.

10.     The Daniels Property is situated along a small, quiet section of N. Ocean Blvd that extends to Wells Road at the north end down to Sunrise Avenue at the south end as set forth in the Town of Palm Beach Existing Road, Bicycle & Pedestrian Network Map attached as **Exhibit "3".**

11.     There are five beach access points along this section of N. Ocean Blvd. The two access points located at the ends of Wells Rd. and Dunbar Rd. are public access points, while the access points located at the ends of Atlantic Avenue, Everglades Avenue and Root Trail are privately owned.  *See* **Exhibit "3".**

12.     Historically, the beaches along this small section of N. Ocean Blvd. have always been quiet and peaceful, with few incidents of trespassing onto private beach property.

*The Mid-Town Beach Nourishment Project*

13.     In or about 2014, the Town commenced a beach renourishment project known as the Mid-Town Beach Nourishment Project aimed at protecting shorelines in the area, including those along the section of N. Ocean Blvd.  where the Daniels Property is located.

14.     In or about December of 2014, Daniels, on behalf of 100 Everglades, executed a Temporary Easement for the Mid-Town Beach Nourishment Project (the "Temporary Construction Easement"), a copy of which is attached **as Exhibit "4."**  Numerous other beachfront property owners in Daniels' neighborhood executed similar Temporary Construction Easement documents around this time. Pursuant to its terms, the Temporary Construction Easement gave the Town of Palm Beach a nonexclusive easement for the purposes of:

constructing, implementing and maintaining the Mid-Town Beach Nourishment Project and shall include without limitation, the right to

4

utilize the Easement Property for enlarging and maintaining the beach shoreline by filling with compatible sand, for removing derelict erosion control structures and other debris that pose a safety hazard, and for planting and maintaining native dune vegetation to prevent further erosion of the shoreline.

15.     The Temporary Construction Easement further provided that "Nothing herein shall be deemed to be a gift, grant, or dedication to of for the general public and this Easement shall be strictly limited to and for the purposes expressed herein."   The Temporary Construction Easement was set to expire pursuant to its terms on May 1, 2023.

*The Town's Efforts to Obtain Cost Sharing*

16.     Sometime in 2019, the Town placed a public beach access sign at the private beach access point at the end of Atlantic Avenue. Daniels, along with other beachfront owners in the neighborhood, objected to public beach access sign being placed at the Atlantic Avenue private beach access point.

17.     It was soon learned that the Town Mayor, Gail Coniglio, had executed a grant agreement with the Florida Department of Environmental Protection ("FDEP") in 2018 which misrepresented the Atlantic Avenue (mistakenly referred to as Atlantic Road in the agreement) access point as being a public access point in order to obtain state funding for the Mid-Town Beach Nourishment Project. A copy of the grant agreement is attached as **Exhibit "5."**

18.     Upon discovering this Daniels, along with other residents, complained to Town officials about the Town's apparent attempt to take over private beach property.

19.     After nine months of "researching" the matter, the Town eventually agreed to remove the public access signage from the private Atlantic Avenue access point. However, the removal of the Atlantic Avenue access point raised among officials that some of the Town's funding eligibility could be jeopardized, and the Town could be forced to return a portion of the cost sharing funds back to the state.

20.     To preserve funding eligibility, the Town placed a public access sign at the nearby Root Trail access point, which was also private.

21.     The owners of the Root Trail access point disputed the Town's claim that it was a public access point and Town proceeded to "research the issue." A copy of an October 2020 Town memo concerning the Root Trail access point is attached as **Exhibit "6".**

22.     The Town Attorney later took the position that the Town had a prescriptive easement that would justify the continued listing of Root Trail Access Point as public regardless of ownership.

*The Town's Request for Owners to Sign New Easements*

23.    In May of 2019, the Town contacted Daniels and other beachfront owners in the neighborhood to insist they execute new perpetual easements to include new language required by U.S. Army Corps of Engineers ("USACE") so it could obtain federal funding for the Mid-Town Beach Nourishment Project. A copy of a May 13, 2019 letter Daniels received from the Town requesting that he execute the new perpetual easement is attached as **Exhibit "7."**

24.    Town officials represented that these new perpetual easements were a mere paperwork formality and would not change the existing limits on the purpose of the easement, or otherwise allow the public to use the private property. These representations were false.   The new perpetual easements included provisions allowing public use and access rights over private beach property, which was a specific condition for federal funding.

25.    Daniels and many other beachfront property owners in the neighborhood refused to sign the new easements due to concern over the new language.

26.    Internally, the Town officials were concerned that if the beachfront owners in Daniels' neighborhood refused to sign the new easements, it would jeopardize the Town's ability to obtain federal cost sharing for the Mid-Town Beach Nourishment Project.   A copy of a September 2019 email from the Town's

Coastal Program Manager, Robert Weber, discussing his inability to get signed easements from beachfront owners between Wells Rd and Seminole Ave. is attached as **Exhibit "8".**

27.     As part of the Town's pressure campaign to convince Daniels and others to sign the new easements, Town officials claimed that the nearby Breakers Hotel, located just south of Sunset Ave, signed the new easement with only minor modifications.  However, the easement that the Breakers signed covered a tiny area measuring 400 square feet that was an otherwise tiny inaccessible fraction of the hotel's approximately 2,400 linear feet of beach front.

28.     Daniels and others neighborhood property owners publicly disputed the Town's representations regarding the language contained in the perpetual easements and accused the Town of attempting to mislead beachfront owners into executing new perpetual easements which, if signed, would result in a perpetual public access and use easements over their private beach properties.

*Increased Trespassing on the Private Beaches Along N. Ocean Boulevard*

29.     During this timeframe, Daniels and beachfront property owners along the section of N. Ocean Boulevard between Wells Rd. and Sunrise Ave. experienced an increase in members of the public trespassing onto their private property landward of the ECL which was due to the fact that the Town had dramatically increased parking fees at the Town's municipal beaches along with

lax regulation of the public portions of the beaches in this area.  The trespassers often brought dogs, alcohol and illicit drugs with them, none of which are permitted on any of the Town's municipal beach properties.

30.     Historically to the extent Daniels and his neighbors had experienced few trespassers on their private beach property, Town police had always been responsive to calls and enforced Daniels' and the neighbors' private property boundaries.  Increasingly however, Daniels' and the neighbors' calls for police assistance with trespassers bringing dogs, drugs and alcohol were going ignored.

31.     Because the lack of regulation was among causes of the recent influx of trespassers showing up with dogs, alcohol and drugs, Daniels asked the Town to extend the same rules applied at the Town's municipal beaches to the beaches in his neighborhood seaward of the ECL where public use and access was allowed. Daniels also signed a petition along with more than a hundred neighboring property owners expressing concern over the damage caused by trespassers when they disturb dunes and vegetation and bring dogs onto private beach property.

32.     Instead of addressing the concerns of Daniels and other neighborhood beach owners, the Town adopted ordinance 04-2020 which

permitted dogs to run unleashed on public beaches between Wells Rd. and Sunset Avenue until 9am, only making matters worse.[1]

*Town Police Say Property Boundaries Must Marked for Enforcement*

33.     In August 2020, after numerous trespass complaints by Daniels and other beachfront owners in the neighborhood, then Lieutenant, Will Rothrock, of the Palm Beach Police Department announced that Town police officers could not enforce private property boundaries on beach property between Wells Rd. and Sunset Ave. unless the boundaries were visibly marked so officers could identify them. A copy of an August 31, 2020, email sent by then Lieutenant, Will Rothrock to police staff discussing the new policy is attached as **Exhibit "9."**

34.     In light of the new police policy, Daniels worked with the Town's Public Work's Department and the FDEP to mark his property boundaries. The FDEP and Town officials instructed Daniels and other neighborhood beachfront owners, to mark their property boundaries with "monoposts," which are single free-standing posts spaced approximately 10 feet apart along with signage in order to guide and educate the public and Town police as to the location of private property boundaries.  A copy of a September 23, 2020, email from Town Coastal

---

[1] In July of 2023, the Town of Palm Beach received a Notice of Intent to Sue under Federal Endangered Species Act for the Unlawful Taking of Leatherback, Loggerhead & Green Sea Turtles based in part on the Town's ordinance allowing dogs to roam off leash on the beaches between Wells Rd. and Sunset Avenue.

Program Manager, Robert Weber, to Daniels confirming that the monoposts are exempt from permitting requirements is attached as **Exhibit "10."**

35.    On September 28, 2020, The Town's Director of Public Works, Paul Brazil, sent a memo to the Town Counsel confirming that monoposts were exempt from permitting and could legally be used by owners to mark private property.  A copy of the September 28, 2020, memo is attached as **Exhibit "11."**

36.    Town police subsequently advised Daniels and other beachfront owners that trespassing calls would be enforced once monoposts and signs were in place.  For a short while, the Town also posted notices at the various beach access points to advise the public regarding the rights of upland private property owners. The notices specifically made reference to the monoposts and signs and advised the public that recreational activities should be limited to areas seaward of the monoposts.  A copy of the notice posted by the Town is attached as **Exhibit "12".**

37.    In reliance on the Town's representations regarding the installation of monoposts and being informed that the police would not enforce private property trespass without them, Daniels expended thousands of dollars to purchase and install monoposts and signage marking his property boundaries.  The monoposts and signage proved effective in educating the public as to the location of private property boundaries and reducing trespass incidents.

38.     In November of 2020, then Lieutenant Rothrock sent an email to officers informing them that property owners had installed posts marking their property boundaries and advising officers that the posts could be utilized for trespass enforcement based on complaints or proactively where there is a Trespass Enforcement Affidavit on file. A copy of Lieutenant Rothrock's November 2020 email is attached as  **Exhibit "13"**

39.     In response to local concerns regarding disturbances on the beach caused by unrestricted access the Town adopted Ordinance 20-2020 in December of 2020 which closed the public beach access points between Wells Rd. and Sunset Ave. from 9:30 PM to 5:30 AM for the safety and protection of Town residents. A copy of Ordinance 20-2020 is attached as **Exhibit "14."** The hours of closure were later changed to sunset to sunrise. In a newspaper article published around the time, Town officials acknowledged the increased beach activity along this stretch of N. Ocean Blvd. was an unintended consequence of raising the parking charges as the Town's municipal beaches. **Exhibit "15."**

40.     However, because the Town did not have in place any regulations for the public beach areas adjacent to private beach properties (public lands seaward of the ECL) along this stretch of N. Ocean Blvd like those for the municipal beaches, which have limited beach access hours and do not permit dogs or alcohol

consumption, Daniels and other beachfront owners continued to have problems with trespassers bringing dogs, alcohol and drugs onto private beach property.

41.     At times, dogs roamed off leash onto the private beach properties in the neighborhood, including the Daniels Beach Property, where they would dig up turtle nests and damage beach vegetation.  And while municipal beaches were off-limits at night, nighttime beachgoers would consume alcohol and leave trash on private portions of the Daniels Beach Property as well as other private beach property in the area.

42.     Daniels and his neighbors repeatedly asked Town to make the dog and beach closure regulations along his neighborhood section of N. Ocean Blvd (for public lands seaward of the ECL) consistent with the beach regulations at public beaches.  A May 2021 email from Daniels to Council members Zeidman, Araskog and Caristo raising concerns about off leash dogs and nighttime trespassers is attached as **Exhibit "16."**

43.     In February of 2021, the Town published a list of frequently asked questions ("FAQ") regarding beach access and public use between Wells Rd. and Sunset Ave. A copy of the FAQ is attached as **Exhibit "17."**

44.     Among other things, the FAQ discussed the monoposts Daniels and other beachfront property owners in the neighborhood had installed and included a claim that the public has the right to reasonable access of the beach regardless of

public or private ownership.  Upon seeing the Town's FAQ, Daniels sent an email to the Town's Coastal Program Manager, Robert Weber, disputing the accuracy of the Town's statements. A copy of Daniel's February 2021 email exchange with Robert Weber is attached as **Exhibit "18"**.

45.    In March of 2021, Daniels sent an email to Paul Brazil, Director of Public Works again disputing the accuracy of the Town's FAQ and accusing the Town of misleading residents into signing the perpetual easements.  A copy of Daniels' March 2021 email to Paul Brazil is attached as **Exhibit "19"**.

46.    In April of 2021, Daniels contacted the FDEP to report that the Town had misrepresented private beach access points as being public in order to obtain funding for its Mid-Town Beach Nourishment Project. A copy of Daniels April 1, 2021 email to the FDEP is attached as **Exhibit "20."**

47.    On April 17, 2021, Captain Rothrock sent an internal email memo to Town police officer with new procedures regarding enforcement of trespass complaints on beaches between Wells Rd. and Sunset Ave. The email stated that the department would no longer recognize any resident placed monoposts and that officers were to look for visual markers such as a fresh seaweed line to determine property boundaries.  A copy of Captain Rothrock's April 17, 2021 email is attached as **Exhibit "21."**

48.     On July 16, 2021, the FDEP sent Daniels an email to inform him that it has removed the Atlantic Avenue access point from the Town's beach funding program and updated its grant agreement with the Town.  A copy of the July 16 email exchange between Daniels and the FDEP is attached as **Exhibit "22."**

*The Town Abruptly Changes its Position on the Monoposts*

49.     Despite his previous instructions to officers a year earlier, on October 22, 2021, Captain Will Rothrock sent an internal email memo to Town police officers informing them that he had just received a legal update from Town Coastal Coordinator Robert Weber on the topic of trespassing and beach use throughout the Town.  The email went on to explain there was a strong argument that the public had an easement for traditional beach use above the ECL and advised officers to explain this to complaining beachfront property owners and take no further action. A copy of the Captain Rothrock's October 2021 email is attached as **Exhibit "23."**

50.     In January of 2022, Captain Will Rothrock publicly confirmed that the Palm Beach Police Department had adopted a new policy regarding beach trespass complaints based on conversations with Robert Weber and "legal advice" and that Town police would no longer enforce state trespass laws on unimproved private sandy beach property, including Daniels Beach Property based on the determination that the public had an easement for traditional beach use on private

15

property above the ECL.  A copy of a January 10, 2022 email sent by Captain Rothrock explaining the new policy is attached as **Exhibit "24."**

51.     On April 14, 2022, and without any prior notification to Daniels or his neighbors, the Town reversed its prior position regarding the monoposts.  While Town police previously insisted Daniels and other beachfront owners install the monoposts to aid police in trespass enforcement, the Town now claimed that the monoposts were "structures" placed in violation of Town code and initiated code enforcement action against him. A copy of the April 14, 2022, Notice of Violation is attached as **Exhibit "25."**

52.     In defending against the code enforcement action, Daniels identified the recent increase in trespassing events, which were being ignored by the Town, as the reason why property markers such as monoposts were necessary.  A copy of a submission by Daniels detailing beach trespassing events and nuisance issues is attached as **Exhibit "26"**.   As a result of the Town's code enforcement action, Daniels was forced to remove the monoposts and signs marking the boundaries of his private property.

53.     Daniels then began placing plastic cones on the Daniels Beach Property, which he removed every night, to mark and inform the public regarding his property boundaries.  In January of 2023, Daniels received a Code Violation Warning directing him to remove the plastic cones, claiming these too were

impermissible structures.  A copy of the January 23, 2023 Code Violation Warning is attached as **Exhibit "27."**

54.     In March of 2023, in response to Daniels' continued complaints about the lack of police enforcement that may have led to a nighttime drowning on the beach, Town Council president, Maggie Zeidman, informed Daniels that his beach was not private property. A copy of Daniels' March 2023 email exchange with Maggie Zeidman is attached as **Exhibit "28."**

55.     On November 26, 2023, Daniels sent an email to the Town's Chief of Police to inquire whether the Town Police were enforcing trespass on the beach between Sunrise and Wells, and Captain Rothrock responded that Town Police are not enforcing allegations of trespass on sandy beach (wet or dry) areas.  A copy of Daniels' November 2023 email exchange with Captain Rothrock is attached as **Exhibit "29."**

56.     The Town continues to inform members of the public they have an easement for traditional beach use on private property above the ECL and that they will not be subject to state trespassing laws if they utilize private beach property above the ECL, including the Daniels Beach Property.  At the same time, the Town will not permit Plaintiffs to mark the property boundaries, even if done so with plastic cones removed daily, so as to inform the public regarding Plaintiffs' private property rights.

17

57.     As a result, the public has and continues to trespass onto Plaintiffs'
property resulting in damages.

58.     To date, the Town has not paid any compensation to Plaintiffs for the
imposition of public rights of use or public recreational easements over Daniels
Beach Property.

59.     All conditions precedent for the bringing of this action have occurred,
been waived or otherwise have been satisfied.

### COUNT I
### TAKING UNDER THE FIFTH AND FOURTEENTH AMENDMENTS

60.     Plaintiffs incorporate paragraphs 1-59 as if fully stated herein.

61.     The Town adopted an official policy of not enforcing private property
boundaries on any private beach property between Wells and Sunrise based on its
unilateral determination that the public had an easement for traditional beach use
on private beach property throughout this area.  At the same time, the Town has
prohibited Plaintiffs from marking their property boundaries to as to dissuade the
public from trespassing onto their private property.

62.     The Town's official policy of simply declaring the existence of a public
use easement, corresponding refusal to enforce private property boundaries based
on this putative easement, and prohibition against even marking the private
property boundaries, constitutes an unlawful taking of Plaintiffs' private property

without paying just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

63.     As a result of the Town's official policy Plaintiffs have been deprived of the fundamental right to exclude others from their private beach property.

64.     The Town has also denied Plaintiffs the ability to post and mark the boundaries of the Daniels Beach Property as provided under state law, to notify trespassers regarding his property boundaries.

65.     The Town's actions have destroyed the private nature of Plaintiffs' private beach property by rendering it public and thereby eliminating all viable use and enjoyment of that private property.

66.     By telling members of the public that they enjoy an easement for traditional beach use on private property, the Town has encouraged trespassers to occupy and use Plaintiffs' private beach property without permission.

67.     Through its direct and public statements, the Town has encouraged trespassers to occupy and use Plaintiffs' private beach property without permission, and the Town's police have publicly stated they will not enforce state trespassing laws on Plaintiffs' private beach property.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against the Town and in favor of Plaintiffs:

A. Determining that Plaintiffs have suffered a compensable taking.

B.  Determining the amount of just compensation owed to Plaintiffs for the taking of Plaintiffs' private beach property, whether temporary or permanent, landward of the ECL;

C.  Awarding attorneys' fees and costs incurred in bringing this action;

D.  Granting all other relief as is just and proper.

## COUNT II
## VIOLATION OF PROCEDURAL DUE PROCESS

68.  Plaintiffs incorporate paragraphs 1-59 as if fully stated herein.

69.  This is an action for a violation of Plaintiffs' due process rights guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution.

70.  The Town adopted a policy of not enforcing private property boundaries on private beach property between Wells and Sunrise based on its unilateral determination that the public had an easement for traditional beach use on private beach properties in this area; thus, authorizing members of the general public to occupy and use Plaintiffs' private beach property without permission.

71.  The Town's categorical declaration that a public use easement exists on all private beach properties between Wells and Sunrise, and corresponding refusal to enforce private property boundaries based on this putative easement was implemented without evidence that Plaintiffs' property was subject to public use by way of easement, dedication or customary use as defined under state law.

72.     The Town's actions have deprived Plaintiffs of the right to exclude others without providing them with an opportunity to be heard and present evidence before a neutral arbiter of the law.

73.     The Town's determination that Plaintiffs' property is subject to a public use easement is based on undisclosed evidence and constitutes an arbitrary capricious action by Town officials that has no basis in state law.

74.     The Town determined Plaintiffs' property was subject to a public use easement by way of legislative fiat rather than by judicial determination as is required under Florida law.   In fact, Florida Statute 163.035 already has a procedural mechanism in place for municipal governments to adopt ordinances and rules that determine the existence of customary usage rights above the mean high-water line, but the Town has chosen not to employ that procedural mechanism.

75.     As a result of the Town's actions, Plaintiffs have been deprived of their procedural due process rights to which they are entitled under the Fifth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against the Town and in favor of Plaintiffs:

A.     Declaring that the Town's policy of not enforcing property boundaries on Plaintiffs' private beach property based on the

unilateral determination that Plaintiffs' property is subject to a public use easement, is void because it violates the Fifth and Fourteenth Amendments to the United States Constitution by depriving Plaintiffs of a fundamental right without due process;

B.   Enjoining the Town from making representations that Plaintiffs private beach property is subject to a public use easement and otherwise encouraging members of the public to occupy or use Plaintiffs' private beach property.

C.   Awarding attorneys' fees and costs incurred in bringing this action;

D.   Granting all other relief as is just and proper.

## COUNT III
## VIOLATION OF FIRST AMENDMENT

76.   Plaintiffs incorporate paragraphs 1-59 as if fully stated herein.

77.   Despite previous statements by Town officials that Town code permitted Plaintiffs to post and mark their private beach property boundaries with monoposts, the Town subsequently re-interpreted section 137-1472 of its code to prohibit the placement of any "structure" on beach property, including but not limited to signposts, poles, cones, or any other visible marking of property boundaries.

78.     Plaintiffs desire to post their property to give notice to trespassers against entering or remaining on their private property as authorized under the common law and section 810.011, Florida Statutes.

79.     As applied to Plaintiffs, the Town's interpretation of section 137-1472 effectively prohibits them from posting their property to mark boundaries and warn members of the public against trespassing.

80.     The Town's interpretation of section 137-1472 does not allow for an exemption to post private property and communicate private property rights to the public.

81.     The Town's interpretation of section 137-1472 operates as a categorical ban on the posting of any signs or other communicative markers on Plaintiffs' private beach property, and as such is unconstitutionally overbroad and not narrowly tailored to serve significant government interests.

82.     The Town's interpretation of section 137-1472 operates as a categorical ban on the posting of any signs or other communicative markers private beach property, does not leave open meaningful alternative avenues for expression or communication, and effectively bars Plaintiffs from exercising speech on their private beach property.

WHEREFORE, Plaintiffs demand judgment against the Town for application of section 137-1472 of its code so as to create a categorical ban on the

posting of any signs in violation of the First Amendment to the U.S. Constitution, injunctive relief prohibiting the Town from enforcing its categorical ban on the posting of signs on Plaintiffs' private beach property, an award of attorneys' fees and costs and all other relief that is just and proper.

## COUNT IV
## FIRST AMENDMENT RETALIATION

83.     Plaintiffs incorporate paragraphs 1-59 as if fully stated herein.

84.     Plaintiffs engaged in constitutionally protected speech when he (i) demanded that the Town enforce private rights on his property; (ii) publicly accused the Town of misleading beachfront property owners regarding the legal effect of the perpetual easements it was asking property owners to sign;  (iii) posted his property to mark his property boundaries and warn the public against trespassing; (iv) informed the FDEP that the Town had misrepresented the existence of public beach access points for the purposes of obtaining cost-sharing funding for its beach renourishment projects; and (v) accused Town officials of misrepresenting the public's right to access private beach property in the Town, including the Daniels Beach Property.

85.     The Town engaged in a course of conduct designed to harass, intimidate, and punish Plaintiffs for exercising their First Amendment rights by reinterpreting its code so as to prohibit Daniels from posting his property and then pursuing code enforcement action against him.

86.     The Town engaged in a course of conduct designed to harass, intimidate, and punish Plaintiffs for exercising their First Amendment rights by pursuing code enforcement action against them for marking their private beach property in accordance with instructions previously provided by Town officials.

WHEREFORE, Plaintiffs demand judgment against the Town for Declaratory relief that Defendant's actions constitute a violation of Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution, injunctive relief prohibiting Defendant from violating their rights under the First and Fourteenth Amendments to the U.S. Constitution, and attorneys' fees and costs all other relief that is just and proper.

Dated: March 20, 2025.

s/Joseph P. Kenny_____
Joseph P. Kenny, Esquire (FBN: 59996)
WEBER, CRABB & WEIN, P.A.
5453 Central Avenue
St. Petersburg, FL  33710
Telephone: (727) 828-9919
Facsimile: (727) 828-9924
Primary: joseph.kenny@webercrabb.com
Secondary: suzie.whitaker@webercrabb.com
ATTORNEYS FOR PLAINTIFF