UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-80368-RLR

LESLIE B. DANIELS &
100 EVERGLADES, LLC,

    Plaintiffs,

v.

TOWN OF PALM BEACH, FLORIDA,

    Defendant.

_____/

## ORDER GRANTING IN PART AND
## DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant Town of Palm Beach, Florida's (the "Town") Motion to Dismiss. DE 18. The Court has reviewed the Motion, the Response by Plaintiffs Leslie B. Daniels and 100 Everglades, LLC [DE 22], the Town's Reply [DE 25], and the record and is otherwise fully advised in the premises. For the reasons below, the Town's Motion is granted in part and denied in part.

### I.    FACTUAL BACKGROUND

Plaintiff Leslie B. Daniels ("Daniels") resides within the Town of Palm Beach, Florida. DE 1 ¶ 3. Daniels is the lessee of beachfront property located at 100 Everglades Avenue, Palm Beach, Florida 33480 (the "Daniels Property"). *Id.* ¶ 7. The Daniels Property is legally owned by Plaintiff 100 Everglades, LLC ("100 Everglades"), of which Daniels is the sole managing member. *Id.* ¶ 8. Daniels leases this property from 100 Everglades pursuant to a 99-year lease agreement dated December 16, 2010. *Id.* Daniels has resided in the Daniels Property since 2004. *Id.* ¶ 9.

The Daniels Property includes a parcel of beach property (the "Daniels Beach Parcel") that spans approximately 166.75 feet along the Atlantic Ocean and extends seaward approximately 90 feet to the Florida Erosion Control Line ("ECL"). *Id.* The area westward of the ECL includes a large private beach area east of an existing concrete wall, small brick pad and small beach cabana along with a private gate west of the seawall. *Id.* The Daniels Property is situated along a section of N. Ocean Blvd., which has five beach-access points. *Id.* ¶¶ 10–11.

In 2014, the Town commenced the Mid-Town Beach Nourishment Project to protect shorelines in the area, including the shoreline where the Daniels Property is located. *Id.* ¶ 13. In December 2014, Daniels executed a temporary construction easement for the Mid-Town Beach Nourishment Project, which was set to expire pursuant to its terms on May 1, 2023. *Id.* ¶¶ 14–15.

In 2019, the Town placed a public beach access sign at a private beach access point, which Daniels objected to. *Id.* ¶ 16. The Town requested that Daniels and other beachfront owners sign new perpetual easements, but Daniels declined based on concerns over the new easement language. *Id.* ¶¶ 23–28.

During this period, Plaintiffs experienced an increase in trespassers. *Id.* ¶¶ 29–31. In August 2020, after numerous trespass complaints, the Palm Beach Police Department announced that Town police officers could not enforce private property boundaries unless they were visibly marked. *Id.* ¶ 33. Daniels therefore marked his property boundaries with monoposts and signage. *Id.* ¶ 34. In late 2020, Town police advised Daniels that they would enforce trespassing calls once monoposts and signs were in place. *Id.* ¶¶ 36, 38.

On October 22, 2021, Town police officers received a memo stating that there was a strong argument that the public had an easement for traditional beachfront property. *Id.* ¶ 49. In January

2021, Town police publicly confirmed that the Palm Beach Police Department would not enforce beach trespass complaints based on this easement. *Id.* ¶ 50. On April 14, 2022, the Town reversed its prior position regarding monoposts and initiated code enforcement against Plaintiff. *Id.* ¶ 51. Daniels began placing plastic cones on his property, which he removed every night, to mark his property boundaries. *Id.* ¶ 53. The Town again initiated code enforcement on Plaintiff. *Id.* ¶ 55.

Plaintiff alleges that the Town continues to inform the public that they have an easement for traditional beach use on private property above the ECL and that they will not be subject to state trespassing laws. *Id.* ¶ 56. The Town will not permit Plaintiffs to mark the property boundaries. *Id.* As a result, Plaintiffs allege that the public has and continues to trespass onto Plaintiffs' property. *Id.* ¶ 57. To date, the Town has not paid any compensation to Plaintiffs. *Id.* ¶ 58.

## II.  PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on March 20, 2025, asserting 42 U.S.C. § 1983 claims against the Town for (I) taking under the Fifth and Fourteenth Amendments; (II) violation of procedural due process; (III) violation of the First Amendment; and (IV) retaliation in violation of the First Amendment. DE 1. Plaintiffs seek just compensation for the alleged taking and declaratory and injunctive relief related to the alleged constitutional violations. *Id.*

## III.  STANDARD OF REVIEW

A court may grant a motion to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

3

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id.*  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

A court ruling on a motion to dismiss a complaint accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017).  The court need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange*, 934 F.3d 1270, 1273 (11th Cir. 2019). Dismissal for failure to state a claim is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the [plaintiff's] allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In general, a court does not consider anything beyond the face of the complaint and the documents attached thereto. *Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 695 (11th Cir. 2014). A court may properly consider a document not referred to in a complaint if the document is central to the plaintiff's claims and undisputed, meaning that its authenticity is not challenged. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).  Finally, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir.2007).  When "a plaintiff attaches documents and relies upon

the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir.2002)).

## IV.  ANALYSIS

The Town moved to dismiss Plaintiffs' Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). DE 18.  The Court addresses the Town's arguments concerning Plaintiffs' claims in turn: (II) violation of procedural due process; (III) violation of the First Amendment; (IV) First Amendment retaliation; and (I) takings.

### A.  Count II – Violation of Procedural Due Process

Plaintiffs allege that the Town violated Plaintiffs' due process rights under the Fifth and Fourteenth Amendments when the Town categorically declared that a public use easement exists on all private beach properties in the relevant area and correspondingly refused to enforce private property boundaries. DE 1 ¶¶ 69–71.  Plaintiffs allege that the Town deprived Plaintiffs of the right to exclude without providing them an opportunity to be heard and present evidence before a neutral arbiter of law. *Id.* ¶ 72.  Plaintiffs allege that the Town's determination—based on undisclosed evidence—constitutes an arbitrary and capricious action that constitutes "legislative fiat rather than by judicial determination as required under Florida law." *Id.* ¶¶ 71–73.  Plaintiffs ask the Court to void the Town's non-enforcement policy and enjoin the Town from representing the existence of a public use easement. *Id.* at 21–22.

The Town first argues that Plaintiffs' Fifth Amendment due process claim should be dismissed with prejudice because such claims lie only against the federal government. *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United

States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states . . . ."). Plaintiffs do not respond substantively to this argument. *See* DE 22 at 13; *see also ABM ENTERTAINMENT WORLDWIDE, INC. v. KENNY VASQUEZ FELX, et. al.*, No. 1:24-CV-25095-KMM, 2025 WL 1191122, at *1 (S.D. Fla. Mar. 26, 2025) ("The Court may view Defendant's failure to respond to Plaintiff's arguments as a concession."). The Court therefore grants the Town's request insofar as Plaintiffs' claim for violation of procedural due process under the Fifth Amendment is dismissed.

The Town next argues that Plaintiffs cannot state a Fourteenth Amendment procedural due process claim because adequate state court remedies were and are available to Plaintiffs. DE 18 at 11. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. In the Eleventh Circuit, a § 1983 claim alleging a denial of procedural due process requires establishing "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "[T]o be adequate, the state procedure need not provide all the relief available under section 1983." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). "Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." *Id.* "This rule . . . recognizes that the state must have the opportunity to 'remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts' before being subjected to a claim alleging a procedural due process violation." *Id.* (quoting *McKinney*, 20 F.3d at 1560).

The Town argues[1] that Plaintiffs have available adequate state-court remedies to obtain the relief they seek—including by filing a complaint in state court for injunctive and declaratory relief. DE 18 at 12; DE 1 at 21–22.  Florida's Declaratory Judgment Act provides an avenue "to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed." Fla. Stat. § 86.101.  The Town also argues that Plaintiffs could have sued the Town in state court for inverse condemnation. *Lacy v. City of St. Petersburg*, 608 F. App'x 911, 912 (11th Cir. 2015) (holding that the plaintiff's "failure to plead facts showing that Florida's inverse condemnation action is inadequate is also fatal to her procedural due process claim").

In response, Plaintiffs argue that seeking injunctive and declaratory relief in state court would at most terminate ongoing or future encroachments but offer no redress for the Town's past acts. DE 22 at 14.  Plaintiffs argue that the state courts "offer no redress for the taking that has already occurred, which deprived Plaintiffs of their fundamental right to exclude for which the government must pay just compensation." *Id.*

Plaintiffs' Complaint, however, asks the Court to void only the Town's non-enforcement policy and enjoin the Town from representing the existence of a public use easement. DE 1 at 21–22.  Plaintiffs, therefore, have sought only future-looking declaratory and injunctive relief for Plaintiffs' procedural due process claim—relief that Plaintiffs could seek by suing for the same relief in state court. *Id.*  To the extent that Plaintiffs do seek retroactive relief in the form of money

---

[1] The Town notes that Plaintiffs do not allege the absence of an adequate state remedy, which could alone warrant dismissal. *See Lakoskey v. Floro*, No. 19-12401, 2021 WL 5860460, at *4 (11th Cir. Dec. 10, 2021) (stating that the plaintiff "failed to state a valid procedural due process claim because [she] ha[s] not alleged that [Florida] law provided [her] with an inadequate post[ ]deprivation remedy" (quoting *Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) (alterations in original))).

damages, Plaintiffs have already sought just compensation under Count I—for a Takings Clause violation under the Fifth and Fourteenth Amendments. *Id.* at 18–19.

"[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994). Because Plaintiffs currently have adequate process available to them by suing in state court for declaratory or injunctive relief—the same relief Plaintiffs seek under their procedural due process claim here—or inverse condemnation, the Court dismisses Count II. *See Bussey v. Lee Cnty.*, 317 F. App'x 968, 972 (11th Cir. 2009) (finding district court did not err in dismissing procedural due process claim because inverse condemnation served as an adequate post-deprivation remedy).

**B.     Count III – Violation of the First Amendment**

Plaintiffs raise an as-applied challenge to the Town's interpretation of Section 134-1472 of its code. Plaintiffs allege that, as applied, the Town's interpretation of Section 134-1472—prohibiting the placement of any "structure" on beach property—effectively prohibited Plaintiffs from posting to mark boundaries and warn against trespassing. DE 1 ¶¶ 77–82. Plaintiffs argue that the Town's interpretation operates as a categorical ban on the posting of any signs or other communicative markers, and that the ban therefore is unconstitutionally overbroad and not narrowly tailored to serve significant government interests. *Id.* ¶¶ 81–82.

The Town argues that Plaintiffs have not plausibly alleged their as-applied challenge because Plaintiffs were not cited to remove signs, but "poles" and "plastic cones," which the Town argues do not constitute speech. *Id.* Where "plaintiffs seek to vindicate their own rights, the challenge is as-applied." *Jacobs v. The Florida Bar*, 50 F.3d 901, 906 (11th Cir. 1995). "When

8

evaluating an as-applied challenge, the court's inquiry and potential relief focuses only on the particular challenged application." *Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1309 (S.D. Fla. 2014).

Here, Plaintiffs allege that the Town abruptly reversed its prior position and claimed that any monoposts demarcating private beachtown property were "structures" that violated Town code. DE 1 ¶ 51. Plaintiffs allege that they installed monoposts with signage, and later portable cones, to mark private property boundaries and warn against trespassing, which resulted in decreased trespassing. *Id.* ¶¶ 34–38, 53. Plaintiffs allege that the Town initiated code enforcement against Daniels twice, which operated as a "categorical ban on the posting of any signs or other communicative markers." *Id.* ¶¶ 51, 53, 82. Plaintiffs attached the relevant notices of code violation: on April 14, 2022, Plaintiff was cited for "poles placed in the beach area," DE 1-27 at 2; on January 23, 2023, Plaintiff was cited for "plastic cones placed on the sand perpendicular to the beach," DE 1-29 at 2.

"In determining whether the government has violated free speech rights, the initial inquiry is whether the speech or conduct affected by the government action comes within the ambit of the First Amendment." *One World One Fam. Now v. City of Miami Beach*, 175 F.3d 1282, 1285 (11th Cir. 1999). For an object to constitute "speech" within the First Amendment, it must be communicative or symbolic. *Texas v. Johnson*, 491 U.S. 397, 404–05 (1989). "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Id.* at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410–11 (1974)).

9

Here, although the Town cited Plaintiffs for placing monoposts and cones—not expressive signs—Plaintiffs allege that the monoposts generating the citations had signs containing expressive speech. *See* DE 1 ¶ 34 (alleging that the posts were "10 feet apart along with signage in order to guide and educate the public and Town police as to the location of private property boundaries"). Viewing all reasonable inferences in Plaintiffs' favor, the Court takes Plaintiffs' allegation to mean that the signs on the monoposts communicated the message, using words: "This is private property. Do not trespass." And the Court also infers that the substance of Plaintiffs' as-applied claim is not that the First Amendment was violated because of citations on monoposts and cones, but from citations that restricted the expressive signs that were **_on_** the monoposts at the time of the citations.[2]

Bans on signs can violate the First Amendment, *City of Ladue v. Gilleo*, 512 U.S. 43 (1994), and the parties agree that content-neutral (as here) restrictions on signs are subject to intermediate scrutiny. DE 22 at 17. The parties also agree that for the First Amendment to be satisfied, there must be "ample alternative channels for communication" of the information. *Id.*; *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). In other words, for the Town's as-applied ban on Plaintiffs' monoposts (which contained expressive signs) to satisfy the First Amendment, Plaintiffs must have an alternative channel to communicate the expressive information on the

---

[2] The posts and cones, standing alone, likely do not implicate the First Amendment. Those structures function like a fence, a wall, or a hedge—structures or objects that delineate property boundaries, but that do not alone constitute expressive conduct. DE 18 at 15; *cf. LaCroix v. Town of Fort Myers Beach, Fla.*, 38 F.4th 941, 950–51 (11th Cir. 2022) (finding that a town's prohibition on portable signs "entirely forecloses an important medium of expression . . . whether they are carried in the town square or on a public street or on a homeowner's front lawn" and collecting cases that illustrate the kinds of expressive speech protected by the First Amendment).

signs—an alternative channel to communicate that the property belongs to Plaintiffs and that the Plaintiffs do not want people to trespass on the property.[3]

What, then, does the Town contend is Plaintiffs' alternative channel for communication? It is: "Plaintiffs could tell someone he is trespassing just as they expect the Town police to do so." DE 25 at 8. In other words, it is the Town's position that because the individual Plaintiff could exit his residence whenever he sees a trespasser and speak to them, he has an alternative channel of communication. The Court finds this position unpersuasive for two reasons.

First, it does not square well with First Amendment case law. In *City of Ladue v. Gilleo*, the Supreme Court affirmed a summary judgment ruling that invalidated a sign ordinance restricting homeowners from placing signs on their property. 512 U.S. at 45. But under the Town's reasoning in the instant case, the ban in *Ladue* should have been upheld because property owners could stand in their yard and communicate their messages orally to people who passed by—they had an alternative, oral channel of communication. The Supreme Court rejected arguments like the Town's in *Ladue*:

> Ladue contends, however, that its ordinance is a mere regulation of the "time, place, or manner" of speech because residents remain free to convey their desired messages by other means, such as *hand-held* signs, "letters, handbills, flyers, telephone calls, newspaper advertisements, bumper stickers, speeches, and neighborhood or community meetings." However, even regulations that do not foreclose an entire medium of expression, but merely shift the time, place, or manner of its use, must "leave open ample alternative channels for communication." In this case, we are not persuaded that adequate substitutes exist for the important medium of speech that Ladue has closed off.

---

[3] Relatedly, if Plaintiffs had an alternative channel to communicate the expressive information on the signs besides monoposts, the Court might conclude that Plaintiffs' as-applied challenge was properly limited to the citations on the monoposts and cones, not to the signs on the monoposts. But because the Plaintiffs have alleged that there is no other way for them to post their expressive signs besides the monoposts, the Court treats the Plaintiffs' as-applied claim as a challenge against citations on expressive signs contained **_on_** the monoposts.

512 U.S. at 56 (citations omitted).[4]

Second, as authority for the proposition that the Plaintiffs have an adequate, alternative channel of communication in the form of oral communication, the Town cites the Florida Statutes, which states that "Florida law expressly contemplates that notice of trespass be given either by 'actual communication to the offender *or by posting*, fencing, or cultivation . . . ." DE 18 at 15; Fla. Stat. § 810.09(1)(a)(1) (emphasis added). That is exactly what the Plaintiffs allege they cannot do—Section 810.09 allows for trespass convictions in certain circumstances, but the Town will not permit any of them other than oral communication.

The Court must view all reasonable inferences in Plaintiffs' favor. Because the Court infers that the monoposts contained expressive words, and because the Plaintiffs have alleged that they have no alternative channel of communication for those expressions, the Court denies the Town's Motion as to Plaintiffs' as-applied First Amendment challenge, Count III.

## C.   Count IV – First Amendment Retaliation

Plaintiffs allege that after Daniels engaged in constitutionally protected speech, the Town engaged in a course of conduct to harass, intimidate, and punish Plaintiffs by reinterpreting Town code to prohibit Daniels from posting his property and by pursing code enforcement against Plaintiffs. DE 1 ¶¶ 84–86.

The Town alleges that Plaintiffs have not adequately pled all the elements of their First Amendment retaliation claim. DE 18 at 15. The First Amendment "'prohibits government officials

---

[4] The Supreme Court's decision weighed the relative importance of the speech at issue in that case with the local government's interest in regulating the speech, but the Court does not resolve that question here, at the motion-to-dismiss stage. The Complaint does not contain sufficient information about the speech (the Court has engaged in reasonable inferences), and the Town has not fully developed an argument on how its interest in "public safety" is threatened by the Plaintiffs' speech. DE 25 at 6. There are too many open and unanswered questions for the Court to weigh the parties' competing interests at this time. For now, Plaintiffs' Count III survives.

from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To state a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally protected speech or act. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

The Court focuses on the Town's arguments concerning the third prong. Plaintiffs have alleged a retaliatory civil prosecution—pursuing code enforcement against Daniels—by the Town. DE 1 ¶ 84. To bring this claim, Plaintiffs must "plead and prove an absence of probable cause as to the challenged retaliatory arrest or prosecution." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019). The Town argues that Plaintiffs fail to plead an absence of probable cause for the code violations because Plaintiffs admit that Daniels engaged in the underlying conduct—installing posts and cones. DE 18 at 17. *See also O'Boyle v. Com. Grp., Inc.*, No. 22-10865, 2023 WL 2579134, at *4 (11th Cir. Mar. 21, 2023), *cert. denied sub nom. O'Boyle v. Town of Gulf Stream, Fla.*, 144 S. Ct. 486 (2023) ("But where the government actor can show it had probable cause to take legal action against the plaintiff's protected activity, a retaliation claim will usually "fail[ ] as a matter of law." (citing *Nieves*, 587 U.S. at 408)); *Brienza v. City of Peachtree City, Georgia*, No. 21-12290, 2022 WL 3841095, at *8 (11th Cir. Aug. 30, 2022) (requiring "the plaintiff to plead and prove an absence of probable cause as to the challenged retaliatory arrest or prosecution in order to establish the causation link between the defendant's retaliatory animus and the plaintiff's injury").

In response, Plaintiffs argue that they need not plead the absence of probable cause to maintain claims against the Town for retaliatory code enforcement actions. DE 22 at 20. In support, Plaintiff cites to two cases: *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018), and *Gonzalez v. Trevino*, 602 U.S. 653 (2024). The cases concern the no-probable-cause requirement and two potential exceptions that the Eleventh Circuit discussed and recognized in *DeMartini*. 942 F.3d at 1294–97. The potential exceptions arose in the context of First Amendment retaliation claims predicated on criminal arrests, which the Eleventh Circuit then considered in the context of an allegedly retaliatory civil lawsuit. *See generally id.*

Both of Plaintiffs' cited cases, however, indicate how Plaintiffs' pleading falls short. *Gonzalez* concerns the first exception to the no-probable-cause requirement. 602 U.S. at 658. This exception occurs "where the plaintiff establishes retaliation animus and presents 'objective evidence' that he was arrested for certain conduct when otherwise similarly situated individuals (committing the same conduct) had not engaged in the same sort of protected speech and had not been arrested." *DeMartini*, 942 F.3d at 1297. In *Gonzalez*, the Supreme Court held that to fall under the first exception, a plaintiff does not need to provide "very specific comparator evidence," but rather objective evidence to establish that his arrest occurred in "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." 602 U.S. at 658 (quoting *Nieves*, 587 U.S. at 406).

The second exception to pleading the absence of probable cause arises "[w]hen the 'unique' five factual circumstances in *Lozman* exist together." *DeMartini*, 942 F.3d at 1297. *Lozman* involved "unusual circumstances" that were "far afield from the typical retaliatory arrest claim." *Lozman*, 585 U.S. at 99. These were: (1) alleged retaliation pursuant to an official municipal policy

14

of intimidation; (2) alleged retaliation that was premeditated and formed months earlier, before the arrest; (3) objective evidence of a policy motivated by retaliation; (4) little relationship between the protected speech that prompted the retaliatory policy and the circumstances of the arrest; and (5) that the speech at issue—the right to petition—was one of high importance in First Amendment jurisprudence. *DeMartini*, 942 F.3d at 1294 (discussing *Lozman*, 585 U.S. 87).

Here, Plaintiffs have not alleged that the retaliation falls under either of these narrow potential exceptions. Plaintiffs do argue that the code citations themselves "are rooted in the same conduct the Town previously approved." DE 22 at 20. But Plaintiffs do not provide specific factual allegations to ground their conclusory assertion that the Town reinterpreted its code to prohibit Daniels from demarcating his property: Plaintiffs' Complaint specifies that the Town changed its policy in light of a legal update advising the Town and the Palm Beach Police Department of a "strong argument that the public had an easement." DE 1 ¶ 49. Nor does Plaintiff plead that the code enforcement arose from the Town's "retaliatory animus." *Nieves*, 587 U.S. at 398 (citing *Hartman*, 547 U.S. at 259). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must . . . be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 398–99.

Therefore, because Plaintiffs have not sufficiently pled each element of their First Amendment retaliation claim, the Town's Motion is granted as to Count IV.

### D.   Count I – Taking Under the Fifth and Fourteenth Amendment

Plaintiffs allege that when the Town unilaterally declared the existence of a public use easement and then refused to enforce private property boundaries and prohibited marking of the

private property boundaries, the Town engaged in an unlawful taking of Plaintiffs' private property without paying just compensation. DE 1 ¶¶ 61–62.  Plaintiffs allege that the Town's policy has deprived Plaintiffs of the fundamental right to exclude others from their private beach property, denied Plaintiffs the ability to notify trespassers of the property boundaries, destroyed the private nature of Plaintiffs' property and thus eliminated all viable use and enjoyment of that private property, and encouraged trespassers to occupy and use Plaintiffs' private property without permission. *Id.* ¶¶ 63–67.

When the government deprives a property owner of the fundamental right to exclude others, it is a taking *per se*. *Kaiser Aetna v. United States*, 444 U.S. 164, 179–80 (1979).  A taking also occurs when the government gives third parties "a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed." *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 949 (11th Cir. 2018) (quoting *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 832 (1987)).

The Town argues that considered separately or together, the three alleged acts of taking—recognizing a public easement, refusing to trespass the public based on that easement, and prohibiting structures on that easement to demarcate property boundaries—do not effect a government-authorized permanent physical invasion. DE 18 at 7.  The Court focuses on the arguments pertaining to the first alleged act of taking—the Town's declaration of a public easement—which ultimately resulted in the alleged denials of Plaintiffs' right to exclude.  Citing Florida Statute § 161.141, which addresses the property rights of state and private upland owners in beach restoration project areas, the Town argues that the public easement was already created by statute with the first beach nourishment project. DE 18 at 7–8; DE 1-14 at 3.  The Town argues

16

that it did not engage in a taking because it was simply asserting a "pre-existing limitation upon the land owner's title." DE 18 at 7–8; *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1028–29 (1992). The relevant text of the statute states:

> However, prior to construction of such a beach restoration project, the board of trustees must establish the line of mean high water for the area to be restored; and **any additions to the upland property landward of the established line of mean high water which result from the restoration project remain the property of the upland owner subject to all governmental regulations** and are not to be used to justify increased density or the relocation of the coastal construction control line as may be in effect for such upland property. **The resulting additions to upland property are also subject to a public easement for traditional uses of the sandy beach consistent with uses that would have been allowed prior to the need for the restoration project**. It is further declared that **there is no intention on the part of the state to extend its claims to lands not already held by it or to deprive any upland or submerged land owner of the legitimate and constitutional use and enjoyment of his or her property**. If an authorized beach restoration, beach nourishment, and erosion control project cannot reasonably be accomplished without the taking of private property, the taking must be made by the requesting authority by eminent domain proceedings.

Fla. Stat. § 161.141 (emphases added).

In response, Plaintiffs argue that the "additions to upland property" that are subject to a statutory public easement are only those new, extended sandy beach areas created by renourishing previously submerged lands that were held by the state in trust for the public. DE 22 at 5. That is, Plaintiffs assert that the statutory public easement applies to land *seaward* of the erosion control line, not landward. *Id.* But Plaintiffs' cited case law does not support this proposition. Instead, the Florida Supreme Court's reading of Section 161.141 supports the Town's interpretation, not Plaintiff's:

> Pursuant to section 161.141, when a local government applies for funding for beach restoration, a survey of the shoreline is conducted to determine the MHWL for the area. Once established, **any additions to the upland property landward** of the MHWL that result from the restoration project **remain the property of the upland**

17

> **owner subject to all governmental regulations, including a public easement for traditional uses of the beach**. § 161.141.

*Walton County v. Stop Beach Renourishment, Inc.*, 998 So. 2d 1102, 1108 (Fla. 2008), *aff'd sub nom. Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702 (2010) (emphasis added).

The Town asserts, based on Plaintiffs' exhibits attached to the Complaint, that a public easement was first created over Plaintiffs' property in 2003 with the first beach renourishment project. DE 1-14 at 3. But Plaintiffs' exhibit, and the Town's citations, do not specify the scope of that beach renourishment project. They do not definitively indicate that Plaintiffs' property was included in the beach renourishment. They do not indicate what additions, if any, were made to Plaintiffs' "upland property landward" of the mean high tide line—that is, what additions would have been subject to a public easement for traditional uses of the beach. Because these issues of fact inform the question of whether—or when—Section 161.141 created a public easement over Plaintiffs' property, the question is better addressed at the summary judgment stage.

As pled, Plaintiffs have identified a cognizable Fifth Amendment property interest in their right to exclude others from Plaintiffs' private property. *See Givens v. Alabama Dept of Corr.*, 381 F.3d 1064, 1066 (11th Cir. 2004) (requiring that a plaintiff must first demonstrate that he possesses a "property interest" that is constitutionally protected to state a takings claim under federal law). Plaintiffs allege that the Town had previously permitted Plaintiffs to mark their property with monoposts and represented that trespass into the marked areas would be enforced. DE 1 ¶¶ 33–36. Plaintiffs allege that the Town then "encouraged" public use by posting public beach-access signs at private beach-access points, *id.* ¶¶ 16–17; and on its frequently asked questions page, the Town stated that "the public has the right to reasonable access of the beach regardless of public or private

18

ownership," *id.* ¶¶ 41–44. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427 n.5 (1982) (providing that a physical taking occurs when the government "deliberately brings it about that . . . the public at large regularly use, or permanently occupy, space or a thing which theretofore was understood to be under private ownership" (citation and quotation marks omitted)).

Based on the above, because Plaintiffs have sufficiently stated allegations to support their takings claims, and because outstanding questions of fact—and accompanying applications of law—are required to determine whether Section 161.141 created a pre-existing public easement, the Court declines to dismiss Count I at this motion-to-dismiss stage.

For the same reasons, the Court declines to dismiss Counts I and II based on the Town's argument that the claims first accrued in 2003—with the first beach renourishment project—and are therefore barred by the statute of limitations. DE 18 at 13. Section 1983 constitutional claims are characterized as tort claims subject to the statute of limitations governing personal injury actions in the state where the § 1983 action was brought. *See Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985). For any claims that accrued before March 24, 2023, Florida's personal injury limitations period is four years. *See Baker v. Gulf & W. Indus., Inc.*, 850 F.2d 1480, 1482 (11th Cir. 1988) (citing Fla. Stat. § 95.11(3)). "A federal claim is generally considered to accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990).

The Court further declines to dismiss Counts I and II as barred by the statute of limitations based on the Town's argument that, at a minimum, Plaintiffs had reason to know of the public's use rights by 2014, when Daniels gave the Town a temporary construction easement to commence the Mid-Town Beach Nourishment Project. DE 18 at 14; DE 1 ¶¶ 13–14. Plaintiffs have alleged

19

that the temporary construction easement provided that "[n]othing herein shall be deemed to be a gift, grant, or dedication to of [*sic*] for the general public and this Easement shall be strictly limited to the purposes expressed herein." *Id.* ¶ 15; DE 1-6. Because the statute of limitations question goes hand-in-hand with the question of whether Section 161.141 creates a public easement, this affirmative defense is better addressed in a motion for summary judgment or judgment on the pleadings.

## V.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED**:

1. Defendant's Motion is **GRANTED IN PART and DENIED IN PART**. The Motion is granted to the extent that Counts II and IV are **DISMISSED**. The Motion is **DENIED** in all other respects.

2. Defendant shall file an answer within ten days of the date of rendition of this Order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 18th day of August, 2025.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record