UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:25-CV-80368-WPD/BER

LESLIE B. DANIELS and 100
EVERGLADES, LLC,

        Plaintiffs,

v.

TOWN OF PALM BEACH, FLORIDA,

        Defendant.

_____/

## OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court on Plaintiff Leslie B. Daniels' Motion for Summary Judgment [DE 44] and Defendant Town of Palm Beach's Motion for Summary Judgment [DE 54]. The Court has carefully considered the Motions, Responses, Replies, the statements of facts and oppositions thereto, and the evidence submitted in the record. The Court held a hearing on the Motions on February 13, 2026, in which it heard arguments from counsel. The Court is otherwise fully advised in the premises.

### I. Background

Plaintiffs Leslie B. Daniels ("Daniels") and 100 Everglades, LLC ("100 Everglades") (collectively, "Plaintiffs") filed their Complaint against Defendant Town of Palm Beach, Florida's (the "Town") on March 20, 2025. *See* [DE 1]. Daniels leases beach front property located at 100 Everglades Avenue, Palm Beach, Florida 33480 (the "Daniels Property") pursuant to a 99-year lease agreement between Daniels and 100 Everglades, of which Daniels is the sole managing member. The Daniels Property is situated along a section of N. Ocean Blvd. in the Town of Palm Beach and includes a parcel of beach property (the "Daniels Beach Parcel") that

spans approximately 166.75 feet along the Atlantic Ocean. Daniels has resided at the Daniels Property part-time since 2004. Plaintiffs' claims in this action arise from disputes between Daniels and the Town regarding public use of beach property that Daniels claims as his private property not encumbered by any public use easement.

In the Complaint, Plaintiffs asserted 42 U.S.C. § 1983 claims against the Town for (I) taking under the Fifth and Fourteenth Amendments; (II) violation of procedural due process; (III) violation of the First Amendment; and (IV) retaliation in violation of the First Amendment. *See* [DE 1]. Plaintiffs seek just compensation for the alleged taking and declaratory and injunctive relief related to the alleged constitutional violations. *See* [DE 1]. The Town filed a Motion to Dismiss. *See* [DE 18].

On August 18, 2026, Judge Rosenberg entered an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss. *See* [DE 26]. Therein, the Court dismissed Count II - violation of procedural due process and Count IV - retaliation in violation of the First Amendment. The Court allowed Count I - taking under the Fifth and Fourteenth Amendments and Count III - violation of the First Amendment to proceed.

In Count I – Taking Under the Fifth and Fourteenth Amendment, Plaintiffs allege that the Town's policy of declaring the existence of a public use easement, refusing to enforce private property boundaries, and prohibiting marking of private property boundaries has deprived Plaintiffs of the fundamental right to exclude others from their private beach property, denied Plaintiffs the ability to notify trespassers of the property boundaries, destroyed the private nature of Plaintiffs' property and thus eliminated all viable use and enjoyment of that private property, and encouraged trespassers to occupy and use Plaintiffs' private property without permission.

In Count III – Violation of the First Amendment, Plaintiffs raise an as-applied challenge to the Town's interpretation of Section 134-1472 of its code, which prohibits the placement of any "structure" on beach property. Plaintiffs allege that they installed monoposts with signage, and later portable cones, to mark private property boundaries and warn against trespassing, which resulted in decreased trespassing. Plaintiffs allege that the Town initiated code enforcement against Daniels twice, citing him for "poles placed in the beach area" on April 14, 2022, and for "plastic cones placed on the sand perpendicular to the beach" on January 23, 2023. Plaintiffs allege that the Town's interpretation of Section 134-1472 is unconstitutionally overbroad and not narrowly tailored to serve significant government interests because it operates as a categorical ban on the posting of expressive signs that were contained on the monoposts at the time of the citations or other communicative markers.

Following the conclusion of the discovery period, each side moved for summary judgment in their favor as to Counts I and III. *See* [DE's 44, 54].

## II.  Standard of Review

Under Rule 50(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact."  *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law."  *Kerr v. McDonald's Corp.*, 427 F. 3d 947, 951 (11th Cir. 2005) (internal quotations omitted).  Furthermore, "[a]n issue [of material fact] is not

'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n Inc. v. Selective Ins. Co. of Southeast,* 492 F. Appx 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y*, *Fla. Dept. of Corr.*, 716 F. 3d 525, 530 (11th Cir. 2013) (citation omitted).

### III.  Discussion

Both sides have moved for summary judgment in their favor as to Counts I and III. For the reasons explained below, Plaintiffs' Motion shall be granted in part and denied in part and the Town's Motion shall be denied.

#### A.  Count I – Takings

"The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that 'private property' shall not 'be taken for public use, without just compensation.'" *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 163-64 (1998) (internal citation omitted). "The right to exclude is 'one of the most treasured' rights of property ownership." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021). It follows that a government act which creates an easement for public use on private property constitutes a taking.

*See id.* at 151-52 ("As a starting point to our analysis, we explained that, had the Commission simply required the Nollans to grant the public an easement across their property, 'we have no doubt there would have been a taking.'") (citations omitted).

The Town acknowledges that government-authorized permanent physical occupation of an owner's property, however minor, is a *per se* taking, citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982). However, the Town takes the position that that is not what occurred here with regard to the Daniels' sandy beach. Rather, the Town asserts, the Town merely asserted "a pre-existing limitation upon the land owner's title," which does not amount to a taking, citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1028–1029 (1992).

Plaintiffs argue that the Town has unconstitutionally taken Daniels' property because the Town's policy and practices allow members of the public to use Daniels' land (specifically his sandy beach parcel) and prevent him from excluding them. Plaintiffs point to the following Town practices and actions which they argue collectively constitute a Town policy, practice, or custom depriving Plaintiffs of any and all means to exclude the public from his private property and thus are an unconstitutional taking of property:

- Adopting and implementing an official police directive refusing to remove trespassers from Daniels' property because the Town decided the public had a right to use his land;
- Requiring Daniels to remove monoposts which excluded the public from his property;
- Requiring Daniels to remove temporary cones which excluded the public from his property;
- Publishing a FAQ document stating that the public had a right of access on privately owned beach lands, like Daniels';
- Refusing to remove members of the public from Daniels' land after Daniels asked the people to leave, and then called the police;
- Town officials, including the Town Manager, Chief of Police, and President of the Town Council, repeatedly told Daniels that his sandy beach property was no longer private, but public;
- Acknowledging that the Town "recognized" a public easement on Daniels' land in 2021.

Defendant Town argues that Plaintiffs' takings claim fails on the following grounds: (1) the public has long since acquired common law customary use rights to recreate on Daniels' private dry sand beach area; (2) Daniels' private property has been subject to a public easement for recreational use pursuant to Fla. Stat. § 161.141 since 2003 due to public beach renourishment projects; (3) the takings claim is barred by the four-year statute of limitations; and (4) the Town's exercise of its discretionary police power not to enforce trespass and/or the Town's enforcement of its zoning code cannot give rise to a taking claim. The Court addresses each of these four arguments, in turn.

**(1) Customary Use**

Defendant Town argues that it is entitled to summary judgment as to Plaintiffs' takings claim based on its customary use defense, contending that the undisputed facts in the record demonstrate that the public has long since acquired common law customary use rights to recreate on Daniels' private dry sand beach area. Defendant points to evidence that Daniels' predecessors allowed the public to engage in traditional recreational uses of the Daniels Beach prior to the need for the renourishment in 2003, going back at least as far as 1970. Defendants also assert that the public has used without interruption the general beach area around it, the Restored Beach, without interruption, for at least 70 years.

"To resolve whether the Town has shown customary use over the dry sand beach in dispute, we look to Florida law." *Buending v. Town of Redington Beach*, 10 F.4th 1125, 1131 (11th Cir. 2021) (citing *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990) (federal courts are bound to follow the decisions of the Florida Supreme Court on issues of Florida state law)). "The Florida Supreme Court first articulated the customary use doctrine in 1974." *Id.* (citing *City of Daytona Beach v. Tona-Rama, Inc.*, 294 So. 2d 73, 78 (Fla. 1974) "In

*Tona-Rama*, the Florida Supreme Court explained that the public could continue using the dry sand area adjoining a tourist attraction if such recreational use were 'ancient, reasonable, without interruption and free from dispute.'" *Id.* Plaintiffs, in contrast, argue the Town's "customary use" defense fails because the undisputed facts establish that at least two of the required prongs, "without interruption" and "free from dispute," two of the strict factual elements required to prevail on this defense, are not met in this case. Having carefully reviewed the parties' arguments and the record, the Court concludes that there is sufficient record evidence to create fundamental genuine issues of material fact for the fact-finder in this case, here the Court at a bench trial, as to these two prongs of the customary use defense, precluding summary judgment in either party's favor as to this issue.

### (2) Fla. Stat. § 161.141

In addition or in alternative to the customary use defense, Defendant Town claims that a public easement arose by operation of Florida Statute Section 161.141 in 2003 when the entire upland property of the Daniels sandy beach was renourished and expanded with public funds. Defendant also maintains that Plaintiffs continued to allow public recreational use of the Daniels Beach prior to the need for the 2006, 2015 and 2020 nourishment projects. Accordingly, Defendant argues, no takings claim could have arisen in 2021 where the public had already acquired a pre-existing statutory easement for use of Daniels beach.

The relevant portion of Fla. Stat. § 161.141, entitled "Property rights of state and private upland owners in beach restoration project areas," provides as follows:

> . . . any additions to the upland property landward of the established line of mean high water which result from the restoration project remain the property of the upland owner subject to all governmental regulations and are not to be used to justify increased density or the relocation of the coastal construction control line as may be in effect for such upland property. **The resulting additions to upland**

> **property are also subject to a public easement for traditional uses of the sandy beach consistent with uses that would have been allowed prior to the need for the restoration project.** It is further declared that there is no intention on the part of the state to extend its claims to lands not already held by it or to deprive any upland or submerged land owner of the legitimate and constitutional use and enjoyment of his or her property. If an authorized beach restoration, beach nourishment, and erosion control project cannot reasonably be accomplished without the taking of private property, the taking must be made by the requesting authority by eminent domain proceedings.

Fla. Stat. § 161.141 (emphasis added). Based on this statute, Defendant Town takes the position that Daniels' private property has been subject to a public easement for recreational use pursuant to Fla. Stat. 161.141 since 2003 due to public beach renourishment projects.

The Court disagrees with the Town's interpretation of Section 161.141. Notably, despite being on the books for 60 years, no court has interpreted Fla. Stat. § 161.141 to impose a public easement on the land on private land solely because it was subject to the replacement of sand. Instead, the Court construes Fla. Stat. § 161.141 as being designed to ensure that public easements already established on private beach lands prior to renourishment under Florida law will continue after a public renourishment changes and enlarges the beach, *i.e.*, that an existing public easement may expand consistent with its prior allowed use due to the additional square footage, not that the statute creates new easements based on public beach renourishment projects without compensation or compliance with Florida's traditional law of easement. Fla. Stat. § 161.141 does not authorize a public easement on private land where no public easement existed prior to renourishment. Accordingly, as Fla. Stat. § 161.141 merely recognizes that a public easement exists on private land after renourishment if an encumbrance lawfully existed before renourishment, and the Court has already determined that there are factual issues precluding summary judgment as to the issue of customary use on Daniels' sandy beach land, *see supra,*

neither side is entitled to summary judgment as to the application of Fla. Stat. § 161.141 in this case.

### (3) Statute of limitations

Defendant Town also argues that Plaintiffs' takings claim also fails because it is barred by the four-year statute of limitations, one of the Town's affirmative defenses. The Town takes the position that Daniels should have known since at least 2019 when the Town sent Daniels a copy of Section 161.141, Fla. Stat. and highlighted the public easement language therein, receipt of which Daniels acknowledged and examined, that he might have a takings claim, yet he failed to bring suit until March 2025. Defendant also argues that the four-year statute of limitations bars Plaintiffs' takings claim because Plaintiffs knew or should have known that Section 161.141 imposed an easement in favor of the public following the nourishment projects in 2003, 2006, 2015 and 2020.

Here, upon a careful review of the parties' arguments and the undisputed material facts in the record, the Court finds that the Town's statute of limitations defense fails.  Even if the statute of limitations on Plaintiffs' takings claim arguably would have started prior to October of 2021, this defense is defeated as to Plaintiffs' takings claim in based on the undisputed facts in this action because, for one to two years prior to late 2021, the Town treated Daniels' sandy beach area as private property not encumbered by a pubic easement by enforcing trespass and even instructing Daniels to put up posts and cones around the perimeter of his sandy beach so that the Town could enforce trespass. Thus, the clock for the four-year statute of limitations on Plaintiffs' takings claim started after October 18, 2021, when the Town abruptly reversed course in their actions with regard to whether Daniels' sandy beach was encumbered by a public easement after it received a legal opinion (the "Akerman" opinion), adopting the challenged policies, practices,

and customs characterizing Daniels' private sandy property as publicly accessible, withholding trespass enforcement, forbidding Daniels from taking legal actions, depriving Plaintiffs of any and all means to exclude the public from his private property. As Plaintiffs filed this action less than four years later, the statute of limitations does not bar Plaintiffs' takings claim.

**(4) Whether Defendant Town's actions and inactions can give rise to a takings claim**

Defendant Town argues that, even if the public had not acquired public rights of use for decades, a takings claim cannot be based on the Town's exercise of its discretionary police power not to enforce trespass against members of the public on Daniels' beach and/or the Town's enforcement of its zoning code regarding Daniels' monoposts, as these actions and inactions do not constitute physical taking of property and cannot give rise to a taking claim.

The Town characterizes the Town's actions and inactions regarding encouraging members of the public to use Daniels' sandy beach and restricting Daniels from excluding the public too narrowly. "The right to exclude is 'one of the most treasured' rights of property ownership." *Cedar Point*, 594 U.S. at 149. It follows that if a public easement did not exist on Daniels' sandy beach, and the Town acted in such a way that it permitted public occupation of Daniels' property and legally prohibited Daniels from excluding the public from his property, that could constitute government-authorized occupation of an owner's property, which is a taking. *See Loretto*, 458 U.S. at 440. Here, the Town engaged in actions which collectively constitute a Town policy, practice, or custom depriving Plaintiffs of all means to exclude the public from his private property and thus, if there was no public easement on Daniels' sandy beach, could be sufficient for the finder of fact to determine that an unconstitutional taking of property occurred. These actions include claiming an easement on Daniels' land pursuant to Fla. Stat. § 161.141 based on the beach renourishment projects, adopting and implementing an official police directive

refusing to remove trespassers from Daniels' property because the Town decided the public had a right to use his land, requiring Daniels to remove monoposts and temporary cones which excluded the public from his property, publishing a FAQ document stating that the public had a right of access on privately owned beach lands, like Daniels', refusing to remove members of the public from Daniels' land after Daniels asked the people to leave, and then called the police, Town officials repeatedly telling Daniels that his sandy beach property was no longer private, and acknowledging that the Town recognized a public easement on Daniels' land in 2021. *See Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 950 (11th Cir. 2018). ("We are unpersuaded by the City's arguments. First, the evidence at trial supported the jury's finding that a *physical taking occurred* through the continuous occupation of the Chmielewskis' property by members of the general public. Through its actions, the City encouraged public occupation by placing beach access signs, clearing vegetation, creating nearby parking spaces, hosting events at the property, *and refusing to remove trespassers.*") (emphasis added).

### B.  Count III – First Amendment

The basis of Plaintiffs' First Amendment claim (Count III) is that Daniels purposefully erected posts and cones to communicate with the public about his property and the Town determined that the posts and cones which Daniels placed on his sandy beach land with the message "Private Property" are impermissible "structures" that violate Section 134-1472 of the Town Code. Plaintiffs argue that the Town's application of Section 134-1472 to prohibit Daniels' posts and cones with signage violates the First Amendment because it bans too much speech on private property and leaves Daniels without adequate alternative means to communicate to the beach-going public about his Property. Plaintiffs cite favorably to *City of Ladue v. Gilleo*, 512 U.S. 43, 45 (1994) (striking down ordinance prohibiting display of any signs on residential

property except for sale, safety, or identification) and *Linmark Assocs., Inc. v. Willingboro Twp.*, 431 U.S. 85, 87 (1977) (First Amendment protects communication through the use of signs), arguing that these cases control here.

In response, Defendant Town argues that this claim fails as Daniels has not been deprived of adequate alternate channels of communication where he can post signs in other areas of his property and he can hand out leaflets or handbills on the dry sand. Defendant Town further contends that the First Amendment claim fails because Daniels' posts and cones with messages intended to tell the public they have no public use rights are false and misleading speech and thereby are not protected. Defendant relies on *United States v. Kahn*, 244 F. App'x 270, 274 (11th Cir. 2007) ("Here, the district court's permanent injunction was tailored to prohibit the activities of Baxley and ARL that had frustrated federal tax administration. The injunction does not burden more speech than necessary to achieve the government interest of preventing Baxley's interference with the enforcement of the internal revenue laws.") to assert that Plaintiffs' misstatement of the law frustrates and interferes with the Town's enforcement of its own laws and therefore it is not entitled to protection of the First Amendment.

Upon careful consideration of the parties' arguments and the undisputed record facts, the Court agrees with Plaintiffs that the Town's code and actions ban too much speech by prohibiting all signs on Daniels' sandy property. The Town's argument that Daniels has alternative means of communication, such as placing signs on his residential property across the street, passing out leaflets, or yelling at beachgoers, are all inadequate substitutes for signs located on the property about which Daniels seeks to speak. *See City of Ladue* at 56 ("In this case, we are not persuaded that adequate substitutes exist for the important medium of speech that Ladue has closed off. Displaying a sign from one's own residence often carries a message quite distinct from placing

the same sign someplace else, or conveying the same text or picture by other means.”).

Furthermore, the messages on Daniels' boundary posts and cones that said “Private Property”

were not false statements, as it is undisputed that Daniels' land is “private property.” Daniels has

a free speech right to say “Private Property” on his own land. Plaintiffs are entitled to summary

judgment in their favor as to the First Amendment claim, at least as to the signs that said “Private

Property.”

### IV.  Conclusion

Based on the foregoing, it is hereby **ORDERED and ADJUDGED** as follows:

1.  Plaintiffs 100 Everglades LLC and Leslie B. Daniels' Motion for Summary Judgment [DE 44] is **GRANTED IN PART AND DENIED IN PART** as set forth above;

2.  Defendant Town of Palm Beach's Motion for Summary Judgment [DE 54] is **DENIED**;

3.  The parties are reminded that Calendar Call is set for Friday, April 3, 2026 at 10:00 AM, with a bench trial set for the trial period commencing on Monday, April 6, 2022. *See* [DE 76].  The parties shall file Proposed Findings of Fact and Conclusions of Law on or before March 27, 2026. *See id.*

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 19th day of February, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record